1

2

3

4

5

6

7

8               UNITED  STATES  DISTRICT  COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11
JAHANGIR LAHIGI,               ) 1:10-cv—02211-AWI-SKO-HC
12                              )
                 Petitioner,   ) FINDINGS AND RECOMMENDATIONS TO
13                              ) DISMISS THE PETITION IN PART,
                                ) DENY THE PETITION IN PART, AND
14      v.                      ) ENTER JUDGMENT FOR RESPONDENT
                                ) (DOC. 1)
15 MICHAEL L. BENOV, Warden,    )
                                ) **OBJECTIONS DEADLINE:**
16               Respondent.    ) **THIRTY (30) DAYS AFTER SERVICE**
                                )
17 _____ )

18
        Petitioner is a federal prisoner proceeding pro se with a
19
petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.
20
The matter has been referred to the Magistrate Judge pursuant to
21
28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending
22
before the Court is the petition, which was filed on November 29,
23
2010.  Respondent filed a response to the petition on April 22,
24
2011, with supporting documentation.  Petitioner filed a traverse
25
on May 10, 2011.
26
        I.  Background
27
        Petitioner is a citizen of Iran who is presently serving a
28

                                  1

prison sentence at the Taft Correctional Institution (TCI) after having been convicted of the federal offense of importation of opium and sentenced on September 21, 2009, to seventy-two (72) months in prison.  Petitioner alleges that his release date is November 22, 2013; Respondent's records reflect a date of December 5, 2013.  (Pet., doc. 1, 3-4; att. A, doc. 15, 3; ex. 1A, doc. 15 at 10.)

Petitioner was designated by staff of the Bureau of Prisons (BOP) to TCI on November 6, 2009.  (Ans., att. A, doc 15, 3.) The declaration of Cory Clark, a Senior Designator at the Designation and Sentence Computation Center (DSCC) of the BOP, establishes that the designation was made pursuant to 18 U.S.C. § 3621(b), which authorizes the BOP to classify and designate an inmate to the most appropriate facility after considering various factors.  (Id. at 4.)  In Petitioner's case, the factors considered included security level, programming needs, judicial recommendations, release residence, levels of overcrowding, central inmate monitoring issues, and Petitioner's status as an alien.  (Id.)

With jail credits, Petitioner had only approximately sixty (60) months left to serve at the time his was designated to TCI. He was not designated to an institution that was also a hearing site pursuant to the Institution Hearing Program (IHP)[1] because

---

[1] The Institution Hearing Program is a coordinated effort by the BOP, the Immigration and Customs Enforcement (ICE), and the Executive Office for Immigration Review (EOIR) to provide deportation, exclusion, or removal proceedings to sentenced aliens.  (Program Statement 5111.04, doc. 15-1 at 6.) It was implemented in 1997 to meet the Attorney General's mandate to ensure that deportation proceedings begin as expeditiously as possible after the date of conviction and reach a point of completion before the alien's sentence expires.  (Id. at 8.)  Pursuant to Program Statement 5111.04, a hearing site will normally be designated for persons such as Petitioner who have been

1    there were no beds available at institutions that were IHP

2    hearing sites either at the time of Petitioner's designation to

3    TCI or thereafter in April 2011 when Clark made his declaration.

4    (Id. at 4, 6.)[2]  The reason for this was the high number of

5    criminal aliens with federal convictions and the extent of the

6    case backlog that ICE had with respect to hearings.  (Id. at 6.)

7         Thus, instead of placing Petitioner at an institution that

8    was an IHP hearing site, the BOP designated Petitioner to TCI

9    because it was a contract detention center close to immigration

10   offices where his deportation status could be finalized before or

11   at the time of his release from service of his federal criminal

12   sentence.  (Id. at 4-5.)  Clark confirmed that as of December 3,

13   2009, Petitioner had the appropriate designation that would

14   ensure monitoring of his case and transfer if possible, namely,

15   "IHP PEND."  (Id. at 7, ex. 4, doc. 15-2 at 10.)

16        On March 17, 2010, Petitioner informed BOP staff that on

17   January 19, 2010, a detainer had been filed against him for

18   possible deportation by the Bureau of Immigration and Customs

19   Enforcement of the United States Department of Homeland Security.

20   (Id. at 10.)  Petitioner requested transfer to an immigration

21   hearing site in accordance with the IHP so removal proceedings

22

23   convicted of an aggravated felony and are serving sentences of sixty (60)
     months or less, but if the BOP is unable to do so, ICE will process an inmate

24   who is not re-designated to a hearing site at the expiration of the sentence,
     or earlier if a transfer to a hearing site is possible. (Id. at 8, 12-13.)

25   The BOP will monitor an inmate who requires an IHP hearing or deportation
     decision but is not at a hearing site by assigning an "IHP PEND-IHP Pending"

26   designation. (Id. at doc. 15-2, 3.)  TCI is not a hearing site where ICE and
     the EOIR conduct investigations and/or hearings; rather, it is an IHP release

27   site, which is a facility where inmates who are ordered deported ordinarily
     remain until the expiration of their sentences. (Id. at doc. 15-1, 8.)

28        [2] In April 2011, there were 5,184 inmates in "IHP PENDING" status who
     were awaiting placements at an IHP hearing site. (Id. at 6-7.)

1  could be instituted, and, to the extent possible, completed
2  (including any administrative appeals) before his release from
3  incarceration for his underlying aggravated felony. (Id.)
4  Petitioner's request was denied because given the lack of any bed
5  space available at the BOP's IHP hearing sites, the BOP was no
6  longer processing transfers for the purpose of IHP hearings.
7  (Id.)

8       On March 19, 2010, in an attempt at informal resolution
9  within the BOP, Petitioner repeated his request. (Id. at 9.)  A
10 BOP counselor again denied the request because of the absence of
11 any bed spaces available and the resulting cessation of
12 processing of such transfer requests. (Id.)  Petitioner
13 continued seeking an administrative remedy.  The warden denied
14 Petitioner's request on March 24, 2010, reasoning that pursuant
15 to BOP Program Statement 5100.08, the issue of transfers was
16 entrusted to the discretion of the warden and the DSCC;
17 Petitioner's security needs, current offense, disciplinary
18 history, release destination, and detainers were considered in
19 addition to population pressures, but because there was no bed
20 space available at the IHP hearing sites, transfer requests such
21 as Petitioner's were no longer being processed. (Id. at 11-12.)
22 Petitioner's appeal of the warden's denial was unsuccessful
23 because it was determined that the warden had adequately
24 addressed Petitioner's request. (Id. at 14.)

25      Petitioner attached to his petition a copy of a portion of a
26 Taft Correctional Institution Statement of Work which provides
27 that the low security institution was designated as a release
28 site with 275 beds for inmates participating in the Institution

4

Hearing Program (IHP).  (Id. at 16.)

In this proceeding, Petitioner claims his statutory right to initiate removal proceedings based on 8 U.S.C. § 1228(a)(3)(A), and supported by BOP Program Statements 5111.01 and 5111.04, was violated by Respondent when Respondent failed to designate Petitioner to be placed in an IHP hearing site, which would permit the initiation of Petitioner's removal proceedings before his federal sentence expires.  Petitioner contends this will result in a de facto increase in his sentence because due to his failure to be designated to a hearing site, his removal proceedings will not or cannot be completed before his sentence expires.  (Id.)  Thus, he will spend more time in custody than the statutory scheme governing immigration contemplates.  Petitioner requests an order directing Respondent to take appropriate steps to transfer him to an IHP hearing site to commence his removal proceedings and to complete the process in the time prescribed by Congress or before Petitioner's release from incarceration.  (Id. at 5.)

II.   Absence of Subject Matter Jurisdiction

Respondent argues that the petition should be dismissed based on lack of jurisdiction.

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).  The scope of habeas review under § 2241 extends to both constitutional and statutory questions as well as to claims brought under the doctrine of equitable estoppel.  Barapind v.

1   Reno, 225 F.3d 1100, 1110 (9th Cir. 2000).

2       Although a federal prisoner who challenges the validity or

3   constitutionality of his conviction must file a petition for writ

4   of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner

5   challenging the manner, location, or conditions of the execution

6   of a sentence must bring a petition for writ of habeas corpus

7   under 28 U.S.C. § 2241.   Hernandez v. Campbell, 204 F.3d 861,

8   864-65 (9th Cir. 2000).

9              A.   Legality or Duration of Confinement

10      Respondent contends that the petition should be dismissed in

11  part because Petitioner's claim does not have the ability to

12  affect the legality or duration of Petitioner's confinement.

13      Relief by way of a writ of habeas corpus extends to a person

14  in custody under the authority of the United States if the

15  petitioner can show that he is "in custody in violation of the

16  Constitution or laws or treaties of the United States."   28

17  U.S.C. § 2241(c)(1) & (3).   A habeas corpus action is the proper

18  mechanism for a prisoner to challenge the fact or duration of his

19  confinement.   Preiser v. Rodriguez, 411 U.S. 475, 485 (1973);

20  Tucker v. Carlson, 925 F.2d 330, 332 (9th Cir. 1990) (holding in

21  a Bivens[3] action that a claim that time spent serving a state

22  sentence should have been credited against a federal sentence

23  concerned the fact or duration of confinement and thus should

24  have been construed as a petition for writ of habeas corpus

25  pursuant to § 28 U.S.C. § 2241, but to the extent the complaint

26  sought damages for civil rights violations, it should be

27  _____

28      [3] The reference is to Bivens v. Six Unknown Named Agents of Federal
    Bureau of Narcotics, 403 U.S. 388 (1971).

                                  6

construed as a <u>Bivens</u> action); <u>Crawford v. Bell</u>, 599 F.2d 890,
891–892 (9th Cir. 1979) (upholding dismissal of a petition
challenging conditions of confinement and noting that the writ of
habeas corpus has traditionally been limited to attacks upon the
legality or duration of confinement); and <u>see</u>, <u>Greenhill v.
Lappin</u>, 376 Fed. Appx. 757, 757-58 (9th Cir. 2010) (unpublished)
(holding that the appropriate remedy for a federal prisoner's
claim that relates to the conditions of his confinement is a
civil rights action under <u>Bivens</u>).  Claims concerning various
prison conditions that have been brought pursuant to § 2241 have
been dismissed in this district for lack of subject matter
jurisdiction with indications that an action pursuant to <u>Bivens</u>
is appropriate.  <u>See</u>, <u>e.g.</u>, <u>Dyson v. Rios</u>, 2010 WL 3516358, *3
(No. 1:10-cv-00382-DLB (HC), E.D.Cal. Sept. 2, 2010) (challenge
to placement in a special management housing unit in connection
with a disciplinary violation); <u>Burnette v. Smith</u>, 2009 WL 667199
at *1 (No. CIV S-08-2178 DAD P, E.D.Cal. Mar. 13, 2009) (a
petition seeking a transfer and prevention of retaliation by
prison staff); <u>Evans v. U.S. Penitentiary</u>, 2007 WL 4212339 at *1
(No. 1:07-CV-01611 OWW GSA HC, E.D.Cal. Nov. 27, 2007) (claims
brought pursuant to § 2241 regarding a transfer and inadequate
medical care).

Here, Petitioner seeks an order directing his transfer so
his removal proceedings may begin or even be completed by the
time he has fully served his criminal sentence.  Petitioner thus
seeks to affect not the legality or duration of his present
confinement pursuant to his federal sentence, but rather the
amount of time he will be subject to confinement thereafter

pursuant to the authority of the ICE.  However, Petitioner is not

presently in the custody of the ICE for habeas corpus purposes.

Although Petitioner is subject to an ICE detainer for possible

deportation, a detainer letter alone is insufficient to place an

alien in ICE custody for habeas corpus purposes.  Campos v. INS,

62 F.3d 311, 314 (9th Cir. 1995).

It thus appears that Petitioner is seeking to litigate the

legality or duration not of his present confinement, but rather

of possible or potential confinement by the ICE in the future.

Under the authorities cited above, the petition may be dismissed.

However, § 2241 does not contain language limiting habeas

jurisdiction to petitioners who are claiming the right to be

released.  Further, habeas jurisdiction pursuant to § 2241 has

been exercised in cases involving conditions.  See, Rodriguez v.

Smith, 541 F.3d 1180, 1187 (9th Cir. 2008) (holding in a habeas

proceeding brought pursuant to § 2241 that regulations relating

to the BOP's discretionary placement decisions were invalid

because they conflicted with the congressional intent of 18

U.S.C. § 3621(b)); Montano-Figueroa v. Crabtree, 162 F.3d 548,

549 (9th Cir. 1998) (permitting the use of § 2241 for a challenge

to the BOP's policies regarding, and scheduling of, restitution

fine payments); United States v. Lemoine, 546 F.3d 1042, 1046

(9th Cir. 2008) (challenge to restitution schedule made pursuant

to § 2241); and see, e.g., Cardenas v. Adler, 2010 WL 2180378

(No. 1:09-cv-00831-AWI-JLT HC, E.D.Cal. May 28, 2010) (holding

that a petitioner's challenge to the constitutionality of the

sanction of disciplinary segregation and claim that the

disciplinary proceedings were the product of retaliation by

prison staff were cognizable in a habeas proceeding pursuant to § 2241).

In view of the uncertainty with respect to the scope of jurisdiction pursuant to § 2241 to adjudicate claims concerning conditions of confinement that also constitute matters related to the execution of a sentence, the Court will proceed to consider the Respondent's additional argument concerning the lack of jurisdiction to adjudicate Petitioner's claims.

B.   Judicial Review of the BOP's Discretionary Placement Decision

Respondent argues that this Court lacks subject matter jurisdiction to review the BOP's discretionary action of designating Petitioner to his institution of confinement.

Congress has mandated that the BOP, under the direction of the Attorney General, shall have charge of the management and regulation of all federal penal and correctional institutions. 18 U.S.C. § 4042(a)(1).  Congress has delegated to the BOP the authority to designate the institution of confinement.  Title 18 U.S.C. § 3621(b) provides in pertinent part as follows:

(b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

1) the resources of the facility contemplated;

2) the nature and circumstances of the offense;

3) the history and characteristics of the prisoner;

4) any statement by the court that imposed sentence-

A) concerning the purposes for which the
sentence to imprisonment was determined to
be warranted; or

B) recommending a type of penal or correctional
facility as appropriate; and

5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2)
of title 28.

In designating the place of imprisonment or making transfers
under this subsection, there shall be no favoritism given
to prisoners of high social or economic status.  The Bureau
may at any time, having regard for the same matters, direct
the transfer of a prisoner from one penal or correctional
facility to another.

18 U.S.C. § 3621(b).

In Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2010), a federal

prisoner proceeded pursuant to 28 U.S.C. § 2241 with a claim that

the BOP had abused its discretion in expelling him from a

residential drug abuse program (RDAP).  The Petitioner sought re-

admission into the RDAP and a twelve-month reduction in sentence

upon successful completion of the program.  The court held that

18 U.S.C. § 3625 precludes judicial review of discretionary,

individualized RDAP determinations made by the BOP pursuant to 18

U.S.C. § 3621, which placed in the discretion of the BOP the

determination of RDAP eligibility and entitlement to sentence

reductions for program participation.  The court based its

decision on provisions of the Administrative Procedure Act (APA)

that provided a cause of action for persons suffering legal wrong

or adverse effect from agency action, but which further withdrew

the cause of action to the extent that the pertinent statute

"preclude[s] judicial review" or "the agency action is committed

to agency discretion by law."  Reeb v. Thomas, 636 F.3d at 1226;

5 U.S.C. §§ 702, 701(a).  The court relied on 18 U.S.C.

10

§ 3625, which stated in pertinent part that the provisions of 5

U.S.C. §§ 701 through 706[4] "do not apply to the making of any

determination, decision, or order under this subchapter."  Reeb,

636 F.3d at 1226 (quoting 18 U.S.C. § 3625).  The court stated

the following:

> There is no ambiguity in the meaning of 18 U.S.C. §
> 3625. The plain language of this statute specifies that
> the judicial review provisions of the APA, 5 U.S.C. §§
> 701-706, do not apply to "any determination, decision,
> or order" made pursuant to 18 U.S.C. §§ 3621-3624. The
> BOP has authority to manage inmate drug treatment
> programs, including RDAP, by virtue of 18 U.S.C. §
> 3621. To find that prisoners can bring habeas petitions
> under 28 U.S.C. § 2241 to challenge the BOP's
> discretionary determinations made pursuant to 18 U.S.C.
> § 3621 would be inconsistent with the language of 18
> U.S.C. § 3625. Accordingly, any substantive decision by
> the BOP to admit a particular prisoner into RDAP, or to
> grant or deny a sentence reduction for completion of
> the program, is not reviewable by the district court.
> The BOP's substantive decisions to remove particular
> inmates from the RDAP program are likewise not subject
> to judicial review.

Id. at 1227.  The court emphasized that the RDAP decisions

challenged in that case were matters properly left to the BOP's

discretion.  Id.  The court noted that although the decisions

could not be reviewed for abuse of discretion, judicial review

remained available for allegations that BOP action was contrary

to established federal law, violated the United States

Constitution, or exceeded statutory authority.  Id. at 1228.

The present case is analogous with Reeb.  Pursuant to

§ 3621(b), the designation of an institution of confinement is a

matter within the discretion of the BOP.

Petitioner argues that he has a statutory right to placement

in a hearing site, relying on 8 U.S.C. § 1228(a)(3)(A), which

---

[4] Title 5 U.S.C. § 706 defines the scope of judicial review of agency action.

provides for the expedited removal of aliens convicted of

committing aggravated felonies, and provides as follows:

> Notwithstanding any other provision of law, the
> Attorney General shall provide for the initiation
> and, to the extent possible, the completion of removal
> proceedings, and any administrative appeals thereof,
> in the case of any alien convicted of an aggravated
> felony before the alien's release from incarceration
> for the underlying aggravated felony.

8 U.S.C. § 1228(a)(3)(A).[5]  However, the terms of this provision

do not confer a right of judicial review or limit the discretion

of the BOP and the Attorney General to designate institutions of

confinement.  Section 1228(a)(3)(A) expressly qualifies the

direction to complete removal proceedings by providing that the

Attorney General is to do so "to the extent possible."  Further,

although § 1228(a)(1) directs that the proceedings be conducted

in a manner which eliminates the need for additional detention at

any processing center of the service and assures expeditious

removal following the end of the alien's incarceration for the

underlying federal sentence, it also provides in pertinent part

as follows:

> Nothing in this section shall be construed to create
> any substantive or procedural right or benefit that is
> legally enforceable by any party against the United
> States or its agencies or officers or any other person.

28 U.S.C. § 1228(a)(1).

The Court, therefore, concludes that as with the statutory

scheme in Reeb, the placement of an alien prisoner who has

committed an aggravated felony is a matter within the discretion

---

[5] Section 1228(a)(3)(B) further provides:

Nothing in this section shall be construed as requiring
the Attorney General to effect the removal of any alien
sentenced to actual incarceration, before release from
the penitentiary or correctional institution where such
alien is confined.

1  of the BOP.  Title 8 U.S.C. § 1228 does not disturb this

2  discretion.  Permitting a prisoner to bring a habeas petition

3  pursuant to 28 U.S.C. § 2241 to challenge the BOP's discretionary

4  determination under § 3621 would conflict with the clear language

5  of § 3625, which removes this Court's jurisdiction to review such

6  discretionary determinations.

7      Accordingly, to the extent that Petitioner seeks this Court

8  to review the discretionary decision of the BOP concerning his

9  placement at TCI or potential transfer from TCI, it will be

10  recommended that Petitioner's claim be dismissed for lack of

11  subject matter jurisdiction.

12      III.  <u>Violation of BOP Program Statement</u>

13      Petitioner argues that he has a right to initiate removal

14  proceedings pursuant to a TCI Contract Statement of Work and

15  pursuant to BOP Program Statement 5111.01, which provides that

16  alien inmates will be made available to the ICE and the EOIR to

17  allow for deportation hearings to be completed prior to sentence

18  expiration. (Pet. at 4.)  However, the nature and status of the

19  statement of work is unclear.  The Court is aware of no legal

20  basis for considering a statement of work to be legal authority

21  binding the BOP.

22      The BOP's purported violation of its own program statement

23  is not a violation of federal law such that the district court

24  would have jurisdiction to review such a claim.  <u>Reeb v. Thomas</u>,

25  636 F.3d at 1227-28.  Program statements may be altered by the

26  BOP at will without the formalities of the APA, such as public

27  notice and comment; as such, they have been characterized as

28  merely being internal agency guidelines, interpretive rules, or

1  policies.  Id. at 1227-28 & n.3 (reviewing authorities).

2      Accordingly, Petitioner's claim that the BOP's conduct or

3  policies violated the BOP's program statement does not state

4  facts that would entitle Petitioner to relief in a proceeding

5  pursuant to 28 U.S.C. § 2241.  It will therefore be recommended

6  that Petitioner's claim concerning a violation of the BOP's

7  program statement and work agreement be denied.

8      IV.  Program Contrary to Statutory Authority

9      Petitioner contends that the BOP's adoption of a program

10  pursuant to which Petitioner would not be transferred to a

11  hearing site makes it impossible to deliver the process that the

12  statute commands.  (Pet. at 4-5.)  He further contends that

13  8 U.S.C. § 1228 constrains the BOP's discretion to maintain an

14  eligible prisoner in detention without transfer to a hearing site

15  because the purpose is to ensure that a prisoner is kept in

16  immigration detention for no longer than necessary.  (Id. at 5.)

17  Petitioner appears to argue that the BOP's programmatic exercise

18  of discretion to transfer otherwise eligible inmates to a hearing

19  site only when a bed is available is contrary to 8 U.S.C. § 1228.

20  Respondent does not address this claim or argument.

21      Program Statement 5111.04, submitted by Respondent, reflects

22  that inmates newly committed to TCI who are serving sentences of

23  sixty months or less and who are without deportation orders are

24  designated to a hearing site as bed space availability permits;

25  if a hearing site is not designated, the reasons will be

26  documented on an appropriate designation form.  If the designator

27  thereafter remains unable to re-designate a hearing site for the

28  inmate, justification will be entered on the appropriate forms

14

1   and be retained in the inmate's central file.   ICE will process

2   inmates who were not re-designated at the time of the expiration

3   of their sentences.   (Doc. 15-1, 11-12.)   Beds in hearing sites

4   and release sites are allocated to inmates based on the amount of

5   time remaining on their sentences in order to prevent delaying

6   the hearing process.   (<u>Id.</u> at 13.)

7       Although there is no subject matter jurisdiction in this

8   Court to review individualized, discretionary determinations made

9   by the BOP pursuant to 18 U.S.C. § 3621, judicial review remains

10  available for allegations that BOP action is contrary to

11  established federal law, violates the Constitution, or exceeds

12  statutory authority.   <u>Reeb v. Thomas</u>, 636 F.3d at 1228.   This

13  Court retains jurisdiction to determine whether  non-

14  individualized BOP action is contrary to its statutory authority.

15  <u>Close v. Thomas</u>, 653 F.3d 970, 973-74 (9th Cir. 2011), <u>cert.</u>

16  <u>den.</u>, 132 S.Ct. 1606 (2012).

17      In <u>Close v. Thomas</u>, 653 F.3d 970, the court considered the

18  question whether BOP's interpretation of a statute that provided

19  for prioritizing inmates' eligibility for entering into a

20  residential drug abuse treatment program was contrary to its

21  statutory authority.   The set forth the appropriate path of

22  analysis as follows:

23          When we "review[ ] an agency's construction of the
            statute which it administers, [we are] confronted with
24          two questions. First, always, is the question whether
            Congress has directly spoken to the precise question at
25          issue. If the intent of Congress is clear, that is the
            end of the matter...." <u>Chevron, U.S.A., Inc. v. Natural</u>
26          <u>Res. Def. Council, Inc.</u>, 467 U.S. 837, 842, 104 S.Ct.
            2778, 81 L.Ed.2d 694 (1984). If we determine that "the
27          statute is silent or ambiguous with respect to the
            specific issue, the question for the court is whether
28          the agency's answer is based on a permissible
            construction of the statute." <u>Id.</u> at 843, 104 S.Ct.

15

2778.

> To determine Congress's intent, "[a]s always," the "starting point is the plain language of the statute." Greenwood v. CompuCredit Corp., 615 F.3d 1204, 1207 (9th Cir.2010) cert. granted, ––– U.S. ––––, 131 S.Ct. 2874, 179 L.Ed.2d 1187 (2011). We have explained that "[i]f the plain meaning of the statute is unambiguous, that meaning is controlling." Id.

Close v. Thomas, 653 F.3d at 974.

Here, Petitioner relies on 8 U.S.C. § 1228(a)(3)(A), which provides as follows:

> Notwithstanding any over provision of law, the Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony.

8 U.S.C. § 1228(a)(3)(A) (emphasis added).  Section 1228(a)(1) expressly provides that the Attorney General "shall provide for the availability of special removal proceedings" at certain correctional facilities for aliens committing specified criminal offenses, and that except as otherwise provided in that section, the proceedings "shall be conducted in conformity with section 1229a of this title," and in a manner "which eliminates the need for additional detention at any processing center" and "assures expeditious removal following the end of the alien's incarceration" for the underlying federal sentence.  8 U.S.C. § 1228(a)(1).

Title 8 U.S.C. § 1229, which addresses the same subject of removal proceedings concerning aliens convicted of criminal offenses, provides for initiation of removal proceedings by the Attorney General as follows:

(d) Prompt initiation of removal

1) In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General <u>shall begin any removal proceeding as expeditiously as possible after the date of the conviction</u>.

2) Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

8 U.S.C. § 1229(d) (emphasis added).[6]

Although § 1228 uses mandatory language concerning the Attorney General's initiation of removal proceedings before the alien has completed his criminal sentence, the command as to completion of removal proceedings is expressly qualified with the modifying phrase "to the extent possible."  Likewise, in § 1229, the Attorney General is mandated to initiate removal proceedings "as expeditiously as possible after the date of conviction." Thus, according to the plain language of the pertinent statutes, Congress intended expedition – but only to the extent possible.

It is equally clear from §§ 1228(a)(1) and 1229(d)(2) that Congress did not intend the direction to begin removal proceedings as expeditiously as possible to create any substantive or procedural right or benefit that any party, including an inmate, could legally enforce against the Attorney General or any agency or officer of the United States.  Indeed, the predecessor to § 1229(d), namely, 8 U.S.C. § 1252(i), which mandated that the Attorney General begin any deportation proceeding as expeditiously as possible after the date of conviction, did not create an enforceable duty to an inmate in light of Congress's additional direction that nothing in

---

[6] Section 1228(c) provides that an alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States.

§ 1252(i) should be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person. <u>Campos v. Immigration and Naturalization Service</u>, 62 F.3d at 313-14 (finding that an inmate seeking initiation of expedited removal proceedings by the Attorney General had no standing to seek mandamus relief). The court in <u>Campos</u> noted that the requirement of expedited removal proceedings was enacted for the benefit of taxpayers rather than incarcerated aliens to reduce prison overcrowding caused by immigration service delays; the sole purposes of the enactment were economic. <u>Campos</u>, 62 F.3d at 314. Thus, a system that designates inmates based on bed space and length of sentence remaining appears to be fully consistent with Congressional intent.

The record demonstrates that many thousands of aliens who have suffered criminal convictions are awaiting placement in a hearing site in order to facilitate expedited removal proceedings, but bed spaces have not been available. The BOP's system of tracking release information and recording the status of the affected inmates to effectuate transfers as beds become available is not inconsistent with Congress's expressed intent to have expedited removal proceedings to the extent possible.

Accordingly, to the extent that Petitioner claims or contends that the BOP's system reflected in the program statement is contrary to statutory authority, it will be recommended that the petition be denied.

V. <u>Due Process</u>

Petitioner argues that the BOP's denial of an IHP transfer to Petitioner denies Petitioner's due process rights.

However, an inmate does not have a protected liberty interest in either early release from the terms of a sentence or in any discretionary determination concerning conditions of confinement. Reeb v. Thomas, 636 F.3d at 1229, n.4 (citing Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); and Jacks v. Crabtree, 114 F.3d 983, 986 n.4 (9th Cir. 1997)).

Therefore it will be recommended that Petitioner's due process claim be denied.

VI.   Mandamus Relief

For the first time in the traverse, Petitioner argues that this Court has mandamus jurisdiction over the controversy because the BOP has a duty to Petitioner which Petitioner can enforce in mandamus. (Traverse, doc. 16, 1-8.)

It is improper to raise substantively new issues or claims in a traverse, and a court may decline to consider such matters; to raise new issues, a petitioner must obtain leave to file an amended petition or additional statement of grounds. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert. den., 514 U.S. 1026 (1995). Petitioner has not sought leave to file an amended petition. Thus, it will be recommended that the Court decline to consider Petitioner's mandamus claim.

In any event, Petitioner's mandamus claim lacks merit. As previously noted, an incarcerated alien lacks standing to seek mandamus to enforce a statutory provision such as those contained

1  in §§ 1228 and 1229 because all private actions,[7] including

2  mandamus, are abolished by the language prohibiting construction

3  of the statute to create any substantive or procedural right or

4  benefit that is legally enforceable by any party against the

5  United States or its agencies, officers, or any other person.

6  Campos, 62 F.3d at 314.

7      The jurisdiction of the Court is limited to cases and

8  controversies.  U.S. Const. art III, § 1.  For this Court to have

9  subject matter jurisdiction, a petitioner must have standing to

10 sue at the time the action is filed.  Lujan v. Defenders of

11 Wildlife, 504 U.S. 555, 569 n.4 (1992).

12     Accordingly, even if the Court were to consider Petitioner's

13 mandamus claim, it will be recommended that the mandamus claim be

14 dismissed for lack of subject matter jurisdiction.

15     VII.  Recommendation

16     Accordingly, it is RECOMMENDED that:

17     1) To the extent that Petitioner seeks review of the

18 discretionary, individualized decision of the Bureau of Prisons

19 not to designate or transfer Petitioner to an IHP hearing site,

20 the petition be DISMISSED for lack of subject matter

21 jurisdiction; and

22     2) Petitioner's claim that the Bureau of Prisons violated

23 its own program statement be DENIED; and

24     3)  Petitioner's claim that the Bureau of Prisons' program

25 or system was contrary to statutory authority be DENIED; and

26     4)  Petitioner's due process claim be DENIED; and

27

28

    [7] The Court notes that Petitioner concedes that there is no
Administrative Procedure Act remedy.  (Traverse, doc. 16, 6.)

1        5)   The Court DECLINE to consider Petitioner's mandamus

2  claim, but if the Court does consider the claim, the claim be

3  DISMISSED for lack of subject matter jurisdiction; and

4        6)   Judgment be ENTERED for Respondent.

5        These findings and recommendations are submitted to the

6  United States District Court Judge assigned to the case, pursuant

7  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

8  the Local Rules of Practice for the United States District Court,

9  Eastern District of California. Within thirty (30) days after

10  being served with a copy, any party may file written objections

11  with the Court and serve a copy on all parties. Such a document

12  should be captioned "Objections to Magistrate Judge's Findings

13  and Recommendations." Replies to the objections shall be served

14  and filed within fourteen (14) days (plus three (3) days if

15  served by mail) after service of the objections. The Court will

16  then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

17  § 636 (b)(1)(C). The parties are advised that failure to file

18  objections within the specified time may waive the right to

19  appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d

20  1153 (9th Cir. 1991).

21

22

23

24  IT IS SO ORDERED.

25  **Dated:**   **February 12, 2013**            **/s/ Sheila K. Oberto**

26                                 UNITED STATES MAGISTRATE JUDGE

27

28